**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JULIE E. MAURER, AZ Bar No. 023347
Julie.Maurer@lewisbrisbois.com
ANDREW B. KLEINER. AZ Bar No 034479
Andrew.Kleiner@lewisbrisbois.com
2929 N. Central Avenue, Suite 1700
Phoenix, Arizona 85012
Telephone: (602) 385-1040
Facsimile: (602) 385-1051

JACK E. JIMENEZ, CA Bar No. 251648
Jack.Jimenez@lewisbrisbois.com
(Admitted Pro Hac Vice)
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant
GLOBALTRANZ ENTERPRISES, LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA, PHOENIX

| | |
|---|---|
| Juliana Daklin And Samantha Thaler, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Globaltranz Enterprises, LLC,<br><br>Defendant. | Case No. 2:21-cv-00204-JJT<br><br>**DEFENTANT GLOBALTRANZ ENTERPRISES, LLC'S MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS PENDING RESULTS OF ARBITRATION**<br><br>(The Honorable John J. Tuchi) |

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., Defendant GlobalTranz Enterprises, LLC ("GTZ") moves the Court to enforce the arbitration agreement governing Plaintiffs' dispute with their former employer, GTZ, and compel Plaintiffs to arbitrate all claims alleged in the Complaint ("Complaint"). GTZ also moves the Court to stay the proceedings pending the outcome of arbitration. Specifically, Plaintiffs expressly agreed to arbitrate disputes with GTZ—including FLSA claims—and waived collective actions, such as the Complaint at issue before the Court.

/ / /

## I. FACTUAL BACKGROUND

### A. Plaintiffs are Former GTZ Logistics Representatives

Plaintiff Juliana Daklin was hired in September 2018 and Plaintiff Samantha Thaler was hired in January 2019; both were employed as Logistics Representatives. Logistics Representatives generally deal with customers that have freight to ship. Logistics Representatives primary duties include but are not limited to: managing and creating orders for customers through web-based systems, phone, and email; quoting, negotiating pricing, and building shipments for customers; coordinating and scheduling pick-up and/or delivery appointments for assigned customers; and communicating with carrier representatives and other departments to discuss: load options, load details, issues relating to credit/claims/billing/collections, tracking updates, and lost/damaged shipments, etc. (Declaration of Joseph Crofoot ("Crofoot Decl.") ¶¶ 3-4.)

GTZ utilizes a Human Resources Information System called Dayforce. Dayforce is a one-stop shop for employees to access the GTZ company policies, including the employee handbook, information about their benefits, wage statements, and their PTO, among other things. (Declaration of Anne Wolfersberger ("Wolfersberger Decl.") ¶ 2.) Dayforce is introduced to employees during the onboarding process. In Dayforce, employees login and electronically acknowledge they have "read and understood the handbook and policy packet." (Wolfersberger Decl. ¶ 3.) Dayforce logs this acknowledgment and saves it in its databases such that at any time an employee can login and see the handbook and any company policies they acknowledged. (Wolfersberger Decl. ¶ 4.)

In January 2019, the Arbitration Agreement was loaded into Dayforce as part of the employee handbook and policy packet. (Wolfersberger Decl. ¶ 5.) At the same time, GTZ notified all employees that they needed to login to Dayforce and view and acknowledge they: 1) received; 2) reviewed; and 3) agreed to all terms in the 2019 Employee Handbook, which included the Arbitration Agreement. (Wolfersberger Decl. ¶ 5; see also Exhibit A.) For all employees, agreement to arbitrate covered disputes with GTZ was a condition of continued employment. (Wolfersberger Decl. ¶ 6; Exhibit A, at p.4.) Plaintiffs Thaler and

2

4845-8081-4055.1

Daklin both electronically signed the Arbitration Agreement on January 14, 2019. (Declaration of Lindsay Lauzon ("Lauzon Decl.") ¶¶ 3-6; Exhibits B & C.) In January 2020, GTZ notified all employees they needed to re-sign the 2020 version of the employee handbook, which also included the Arbitration Agreement[1]. (Wolfersberger Decl. ¶ 9.) Plaintiff Daklin signed the 2020 Arbitration Agreement on January 21, 2020 and Plaintiff Thaler signed on January 21, 2020. (Lauzon Decl. ¶¶ 5-6; Exhibits B & C.)

**B.  The Arbitration Agreement's Terms**

The Arbitration Agreement provides in pertinent part:

Agreement to Arbitrate Disputes ("Arbitration Agreement"). I ("Employee", "I", or "You") agree and acknowledge that GlobalTranz Enterprises, Inc. ("GlobalTranz") and I will utilize binding arbitration to resolve any and all covered disputes that may arise between us, as set forth more fully in the sections below. Any reference to GlobalTranz also includes any parent companies, subsidiaries, and affiliated entities. I understand and agree to this binding Arbitration Agreement and that I and GlobalTranz give up our respective rights to trial by judge or jury of any covered claim that I may have against GlobalTranz or that GlobalTranz may have against me.

> A. **GlobalTranz and I mutually agree that any covered claim, dispute, and/or controversy, past, present, or future, that GlobalTranz may have against you or that you may have against GlobalTranz**, or its officers, directors, shareholders, members, owners, and employees (all of whom may enforce this Agreement as either a direct or third-party beneficiary) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, separation from employment, or any other association with GlobalTranz **shall be submitted to, resolved, and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ("FAA").** (emphasis added).
>
> B. Unless excluded below in Section 1.C, **this Arbitration Agreement applies, without limitation, to claims based upon or related to** discrimination, harassment, retaliation, defamation (including postemployment defamation or retaliation), breach of a contract or covenant, fraud, negligence, breach of fiduciary duty, trade secrets, unfair competition, wages, minimum wage and overtime or other compensation or any monies claimed to be owed, meal breaks and rest periods, termination, tort claims, common law claims, equitable claims, and claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, **Fair Labor Standards Act**, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee

---

[1] The 2019 and 2020 arbitration agreements are identical. (Wolfersberger Decl. ¶ 7.)



4845-8081-4055.1

Retirement Income Security Act of 1974 or (b) funded by insurance; however, this Agreement does apply to any claims for breach of fiduciary duty, for penalties, or alleging any other violation of ERISA, even if such claim is combined with a claim for benefits), Affordable Care Act, Genetic Information Non- Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local legal claims arising out of or relating to Employee's application for employment, employment or the termination of employment. Except as stated in the Class Action Waiver below, this Arbitration Agreement also covers any dispute relating to the validity, applicability, enforceability, waiver, or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable. (Emphasis added).

C. The following claims are excluded from arbitration: (a) administrative claims by Employee for workers' compensation or unemployment benefits (but claims for discrimination for bringing such claims are covered); (b) Private Attorneys General Act representative claims brought on behalf of the state under the California Labor Code—which must be maintained in a court of law (but a claim by Employee on his or her own behalf as an aggrieved employee for recovery of underpaid wages (as opposed to a representative claim for civil penalties) is arbitrable under this Arbitration Agreement); and (c) claims seeking relief according to federal statutes which expressly prohibit arbitration or for which this Agreement would be invalid as a matter of applicable federal law. [emphasis added]."

(See Exhibit A.)

### C.    Plaintiffs Agreed to Waive Collective and Class Action Claims

In addition to the foregoing language, the Arbitration Agreement also includes a class action and/ or collective action waiver in favor of arbitration. This clause states:

**E. Class Action Waiver. EMPLOYEE AND GLOBALTRANZ WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED, OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION** AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("CLASS ACTION WAIVER"). In the event a final judicial determination is made that the Class Action Waiver is unenforceable and that a class and/or collective action may proceed notwithstanding the existence of this Arbitration Agreement, the Arbitrator is nevertheless without authority to preside over a class or collective action and any class and/or collective action must be brought in a court of competent jurisdiction. Regardless of anything else in this Agreement and/or the AAA Rules or other applicable rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver, including, but not limited to any claim

4845-8081-4055.1

that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

Finally, in the final paragraph before the signature blocks the Arbitration Agreement states:

**By signing below and/or by reporting to work and continuing your employment with GlobalTranz after your first receipt of this Agreement, you agree to be bound to this Arbitration Agreement, as does GlobalTranz. You understand that, as more fully set forth above, you and GlobalTranz must arbitrate any and all covered disputes and legal claims and that you and GlobalTranz are waiving the right to a court or jury trial or to sue in court.**

**DO NOT SIGN UNTIL YOU HAVE READ AND UNDERSTAND THIS AGREEMENT.**

(See Exhibit A.)

### D.   Plaintiffs Agreed to Arbitrate Disputes with GTZ

On January 14, 2019 and again on January 21, 2020, Plaintiff Juliana Daklin logged into Dayforce and electronically signed or acknowledged that she "read and understood" the Agreement. (Lauzon Decl. ¶ 5; Exhibit B.) Plaintiff Samantha Thaler also signed and acknowledged the Agreement on January 14, 2019 and again on January 21, 2020. (Lauzon Decl. ¶ 6; Exhibit C.)

### E.   Plaintiffs Breached the Arbitration Agreement

On February 8, 2021, Plaintiffs filed their Complaint in the United States District Court, District of Arizona in breach of their binding agreement to arbitrate such claims. (Doc 1.) Plaintiffs also breached the agreement by attempting to bring a collective action under FLSA.

## II.   THE FAA COMPELS ENFORCEMENT OF THE AGREEMENT

The Federal Arbitration Act ("FAA") "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chalk v. T-Mobile USA, Inc.,* 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to

4845-8081-4055.1

arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). Thus, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (cleaned up). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000*); Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the answer is "yes" to both inquiries, arbitration must be enforced. *Chiron Corp.*, 207 F.3d at 1130." "Thereafter, the court should stay or dismiss the action to allow the arbitration to proceed." *Pinto v. USAA Ins. Agency Inc. of Tex.* (FN), 275 F. Supp. 3d 1165, 1168 (D. Ariz. 2017) (cleaned up).

      A.      The Arbitration Agreement is Valid

State law determines whether the parties entered into a valid agreement to arbitrate disputes. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009). In Arizona, "[f]or an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Pakter v. Dunne*, No. CV-18-04559-PHX-JZB, 2020 WL 3050573, at *3 (D. Ariz. June 8, 2020).

On January 14, 2019, and again on January 21, 2020, both Plaintiffs agreed to be bound by the arbitration agreement. (Exhibits B & C.) GTZ's offer of continued employment was accepted by Plaintiffs when they logged into Dayforce and electronically agreed to be bound by the Arbitration Agreement. "The parties' consideration consisted of the mutual obligation to arbitrate any employment disputes." *Bufford v. Vxi Glob. Sols. LLC*, No. CV-20-00253-TUC-RCC, 2021 U.S. Dist. LEXIS 12003, at *7 (D. Ariz. Jan. 22, 2021).

///



4845-8081-4055.1

1. <u>Plaintiffs' electronic signatures establish their assent to arbitrate</u>

This Court has held that use of an electronic signature of policy documents, like arbitration agreements, on a company intranet or other human resource information system is valid and binding between the employee and employer. Specifically, in *Pinto v. USAA Ins. Agency Inc. of Tex*. (FN), 275 F. Supp. 3d 1165 (D. Ariz. 2017), plaintiff was hired by USAA and later terminated the same year. The plaintiff sued USAA for willful misconduct and discrimination/violation of FMLA in the United States District Court of Arizona. USAA moved to compel arbitration and dismiss the complaint. In support of the motion, like here, USAA submitted evidence that in 2004 it implemented the Dialogue Dispute Resolution Program ("Dialogue"), which included that nearly all employment-related disputes with USAA were subject to binding arbitration. *Id*. at 1167. USAA posted the Dialogue materials on its intranet and all related documents were available to all employees, including plaintiff. USAA proved that plaintiff acknowledge that he had received, reviewed, and understood the Dialogue materials and consented to be bound thereby. *Id*.

Plaintiff argued that he never agreed to the Dialogue program, let alone arbitration, and that USAA had no evidence he "signed" evidencing his assent. Plaintiff also objected that the agreement was procedurally unconscionable as a contract of adhesion. In support of his lack of signature argument, the plaintiff argued that "Arizona law requires an electronic signature for a person to assent to a contract via email," but failed to offer any legal basis that requires an arbitration agreement had to be signed.

The *Pinto* court found that "a party's signature is not necessary to bind him to arbitration if he was aware of the provision and it was in writing." *Id*. at 1168, quoting *O'Bannon v. United Service Automobile Assoc*., No. 2:15-cv-02231-PHX-SRB, 2016 U.S. Dist. LEXIS 186581, *6 (D. Ariz. June 17, 2016) ("'While the FAA requires writing, it does not require that the writing be signed by the parties.'" (cleaned up).). "Proof that the plaintiff had read the agreement and continued working, has been sufficient to establish consent." *Id*. at 1169 (cleaned up). *Pinto* found there was sufficient evidence that plaintiff was made

aware of Dialogue including the arbitration clause, and that the plaintiff agreed to the following:

> I recognize that I am responsible for reading and understanding the Employee Handbook, and fulfilling the expectations outlined within it. I also understand that it is my responsibility to read and comply with all of USAA's policies and procedures, including those on the Corporate Policies Index on Connect and as otherwise made available to me.

*Pinto v. USAA Ins. Agency Inc. of Tex.* (FN), 275 F. Supp. 3d 1165, 1169 (D. Ariz. 2017). The court concluded that the plaintiff was made aware of the arbitration provision.

Here, the Arbitration Agreements that Plaintiffs electronically signed are no different. Both Daklin and Thaler were notified in January 2019 of the requirement to login to Dayforce and review and sign the Agreement. (Wolfersberger Decl. ¶ 9.) On January 14, 2019, they each separately logged in and electronically agreed to binding arbitration of FLSA disputes, among others, between themselves and GTZ. (Lauzon Decl. ¶¶ 5-6; Exhibits B & C.) In a screenshot from the Dayforce page from 2019 it states:

> Please review and acknowledge you have read and understood the handbook and policy packet.  Furthermore, by acknowledging the Arbitration Agreement and/or by reporting to work and continuing your employment with GlobalTranz after your first receipt of this Arbitration Agreement, you agree to be bound to the Arbitration Agreement, as does GlobalTranz.  You understand that, as more fully set forth above, you and GlobalTranz must arbitrate any and all covered disputes and legal claims and that you and GlobalTranz are waiving the right to a court or jury trial or to sue in court. Please contact HR@globaltranz.com with any questions.

(Exhibit D; Lauzon Decl. ¶ 7.)  Below this language, the page identifies, by name, each of the attachments or document the employee would have accepted and acknowledged.  Indeed, each employee had to select "BINDING ARBITRATION AGREEMENT (1.9.19) to review and sign. (Exhibit D.)  In 2020, the Dayforce page was similar, except that under the Policy section it directed the employees to "Please review all three attachments before accepting." (Exhibit E.)  One of the attachments was labeled "Arbitration Agreement.pdf."  (Exhibit E.) There is no dispute that Plaintiffs agreed to arbitrate their FLSA claims with GTZ when they logged in in January 2019 and again in January 2020. (See Exhibits B, &C.) Plaintiffs' electronic acknowledgements are valid and binding.

/ / /

4845-8081-4055.1

B. **The Arbitration Agreement Encompasses the Dispute at Issue**

Because section 1. B. of the Agreement expressly covers claims brought under the FLSA, and section 1. C of the Agreement does not exclude the claims made by Plaintiffs here, there exists no dispute that this case is properly compelled to arbitration. (See Exhibit A.)

C. **Plaintiffs are Not "Transportation Workers" As Defined Within the Transportation Exemption to the FAA**

Courts have determined that customer service representatives, such as Plaintiffs, do not constitute "transportation workers" for purposes of the FAA exemption; the FAA applies to employment contracts. While § 1 of the FAA exempts from the Act's coverage "contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce*." 9 U.S.C. § 1 (emphasis added). This exemption provision "is limited to transportation workers, defined, [. . .], as those workers 'actually engaged in the movement of goods in interstate commerce.'" *Circuit City*, 532 U.S. at 112 *quoting Cole v. Burns Int'l Security Servs.*, 323 U.S. App. D.C. 133, 105 F.3d 1465, 1471 (D.C. Cir. 1997)). Plaintiffs' positions as Logistics Representatives does not fall under this exemption.

Specifically, this exemption shows Congress's "concern with transportation workers and their necessary role in the free flow of goods . . . ." *Circuit City*, 532 U.S. at 121. The Court surmised that "it would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation." *Id*. "The emphasis [of the § 1 exclusion, therefore,] was on a class of workers in the transportation industry, rather than on workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated." *Hill v. Rent-a-Center, Inc.,* 398 F.3d 1286, 1289 (11th Cir. 2005).

1. <u>Logistics Representatives do not satisfy the transportation worker test</u>

*Lenz v. Yellow Transp., Inc.,* 431 F.3d 348, 351 (8th Cir. 2005), is the leading authority on whether an employee's scope of work falls outside the exemption and has been

followed by the 9th Circuit as well. See *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020). *Lenz* set out an eight-factor test to determine whether an employee is a "transportation worker" under the FAA. *Lenz,* 431 F.3d at 352. The *Lenz* court's non-exclusive factors include: whether the employee works in the transportation industry; whether the employee is directly responsible for transporting goods in interstate commerce; whether the employee handles goods that travel interstate; whether the employee supervises employees who are themselves transportation workers; whether like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; whether the vehicle itself is vital to the commercial enterprise of the employer; whether a strike by the employee would disrupt interstate commerce; and the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties. *Id*.

Applying these factors, the *Lenz* court held that a customer service representative (as here) for a "carrier of general commodities by truck" was not a transportation worker for purposes of the FAA's exemption. *Id*. (Emphasis added). In so holding, the *Lenz* court emphasized that, as a customer service representative responsible for fielding phone calls from customers, the plaintiff never directly transported goods; had no "direct" responsibility for transporting goods; never handled any packages that moved interstate; did not directly supervise drivers in interstate commerce but rather provided information services to customers calling the defendant; did not operate any vehicles for defendant; and was not within a class of workers for which special arbitration already existed at the time the FAA was enacted. See *Lenz*, 431 F.3d 352-53. As the *Lenz* Court further explained:

> [A] strike by commercial service representatives, while inconvenient for Yellow, would not disrupt interstate commerce or halt trucks from delivering the general commodities. . .. [R]egarding the nexus between Lenz's job duties and interstate commerce, Lenz did have a duty to "coordinate freight flow by expediting movement of shipment [sic] and contacting terminal and/or central dispatch" and to "make decisions, as necessary, following the philosophy of 'what is the right thing to do;'" however, taking his job duties as a whole, **Lenz's central task was to answer the questions of and provide information to Yellow customers**, not to supervise packages moving in interstate commerce.

4845-8081-4055.1

*Id*. at 353 (emphasis added).

Similarly, in *Bell v. Ryan Transp. Serv.*, 176 F. Supp. 3d 1251 (D. Kan. 2016), the court analogized a Carrier Sales Representative's duties to the customer service representative's duties in *Lenz*. The *Bell* court found that the plaintiff "did not directly transport goods, did not handle packages or freight, had no direct responsibility for transporting freight; and did not operate any vehicles for defendant." *Id*. at 1257. While the plaintiff argued that he "supervised drivers" thus trying to bolster his role as more transportation centered, the court disagreed, finding that the evidence showed the plaintiff merely communicated by telephone with drivers and customers to obtain and relay information between drivers and customers. *Id*. A critical distinction in *Bell* was that "plaintiff was not employed by the same company as the drivers—he was employed by a logistics company." *Id*. While this fact was not wholly dispositive, the court looked to *Lenz* where the plaintiff there "helped to coordinate the flow of freight in interstate commerce" and the *Lenz* court found no evidence that plaintiff had any responsibility for the freight itself. *Id*. Moreover, the *Bell* court found that, like in *Lenz*, "plaintiff was not within a class of workers for which special arbitration already existed at the time the FAA was enacted and a strike by Carrier Sales Representatives at a third-party logistics company would not stop trucks from shipping freight between shippers and receivers." *Id*.

In *Rittmann v. Amazon.com, Inc.,* 971 F.3d 904, 921 (9th Cir. 2020), the Ninth Circuit held that the delivery driver-plaintiffs were within a narrow role of transportation workers engaged in interstate commerce and thus exempt from the FAA's enforcement provisions. The critical distinction between the *Rittman* plaintiffs and those in other cases the Court examined was that that the delivery drivers' duties, unlike Plaintiffs here, were directly related to the transportation of goods: they were actually transporting goods. *Id*. at 911, quoting *Lenz v. Yellow Transp., Inc*., 431 F.3d 348, 351-52 (8th Cir. 2005).

2. <u>GTZ Logistics Representatives duties are only tangentially related to transportation</u>

Plaintiffs' duties as Logistics Representatives are like the employees in *Lenz* and *Bell*,



11

4845-8081-4055.1

*supra*; they are at best only tangentially related to transportation of goods.

Plaintiffs, as Logistics Representatives, were responsible for bringing in new business and growing the current customer base through developing new clients. (Crofoot Decl. ¶ 5.) Logistic Representatives are not directly responsible for transporting goods; they do not handle goods; they do not supervise transportation workers/drivers, but rather manage and provide information services to customers of GTZ; they are not of a class of employees for which special arbitration rules apply when the FAA was enacted; Logistic Representatives have no driving responsibilities; any strike by Logistic Representatives would not disrupt interstate commerce because the carrier companies who actually transport goods are separate from GTZ and would still operate; and finally, there is no nexus between Logistic Representatives' duties of servicing their customers and the actual duties of transporting cargo. (Crofoot Decl. ¶ 6.)

In sum, Logistics Representatives have no direct responsibility for transportation of goods or cargo. Their role is merely tangential to it, and therefore the transportation worker exemption does not apply to Plaintiffs.

### D.     The Arbitration Agreement is Valid and Conscionable

It is presumed under Arizona law that an arbitration agreement is valid because "the plaintiff bears the burden of proving the unenforceability of the arbitration provision, and the determination of unconscionability is made by the Court as a matter of law." *Pinto v. USAA Ins. Agency Inc. of Tex*. (FN), 275 F. Supp. 3d 1165, 1170 (D. Ariz. 2017) (cleaned up). However, Plaintiffs cannot meet their burden because the Agreement is conscionable.

#### 1.     <u>The agreement is procedurally valid and conscionable</u>

A valid and conscionable arbitration agreement is clear, unsurprising, and available to the parties. *Cf. Maxwell v. Fidelity Financial Services, Inc*., 184 Ariz. 82, 907 P.2d 51, 57-58 (Ariz. 1995) (unconscionability includes " 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.")

Here, Plaintiffs knew about and had access to all GTZ policies, especially the

4845-8081-4055.1

Arbitration Agreement, throughout their employment. (Wolfersberger Decl. ¶ 10.) Plaintiffs used Dayforce to manage and see their PTO, benefits, and monitor their wages. The Arbitration Agreement was also located in Dayforce for them to view at any time. (Wolfersberger Decl. ¶ 10.) The Agreement was a stand-alone document, not buried in the employee handbook or other company policy. (Wolfersberger Decl. ¶ 11.) Plaintiffs had to acknowledge and sign it separate from any other policy and Plaintiffs were not pressured to agree to arbitration the day they were notified it was in Dayforce. Plaintiffs had ample time to read and sign. (Wolfersberger Decl. ¶ 11; see also Exhibits D & E.) Additionally, GTZ advised its employees, including Plaintiffs, "you may also want to consult your own private legal counsel. This is an important document that affects your legal rights." (Exhibit A, at p. 4.) See *Angheloiu v. PeaceHealth*, 781 F. App'x 683, 683 (9th Cir. 2019) (the court found the arbitration agreement was conscionable when plaintiff had ample time to review and seek legal advice before signing.).

Requiring employees to arbitrate their covered disputes with GTZ, as a condition of continued employment, does not render the Agreement unfair or a contract of adhesion. Even so, "[a] contract of adhesion is fully enforceable . . . ." *Brady v. Universal Tech. Inst. of Arizona, Inc*., No. CV-09-1044-PHX-FJM, 2009 U.S. Dist. LEXIS 122810, 2009 WL 5128577, at *2 (D. Ariz. Dec. 17, 2009); see also *Longnecker v. Am. Express Co*., 23 F. Supp. 3d 1099, 1108 (D. Ariz. 2014) (not a contract of adhesion because plaintiffs had to agree to arbitration as term of employment and could not negotiate); *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 33, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ("mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement).

Plaintiffs received the Agreements, they had all the time they needed to review and assent. They signed the agreements and by so doing they chose to continue their employment and contractually bound themselves to arbitrate any FLSA disputes they had with GTZ. Accordingly, the Agreement is conscionable.

/ / /

4845-8081-4055.1

### 2. The Agreement is substantively valid and conscionable

Substantive unconscionability deals with contract fairness. *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 90 (Ariz. 1995). The Arbitration Agreement is exceedingly fair. The Agreement provides that the both parties will select the arbitrator with rules for handling that dispute, if it arises. (Ex. A, at § 1. D.) The AAA rules are described with instructions of how to located them on the internet. (Ex. A, at § 1. D.) The Agreement allows for limited written discovery as well as depositions, and it empowers the arbitrator to grant additional discovery if requested. (Ex. A, at § 1. D.) The arbitrator is also empowered to rule on dispositive motions and has the ability to subpoena witnesses to be compelled to appear. (Ex. A, at § 1. D.)

Additionally, the Agreement provides that, other than a filing fee, GTZ pays all arbitration fees and costs as required by AAA. (Ex. A, at § 1. F.) But if Plaintiffs demonstrate financial hardship, Plaintiffs do not even have to pay the filing fee. (Ex. A, at § 1. F.) The Agreement also provides that each party is to bear their own attorney's fees and preserves the potential for prevailing party attorney's fees if available by statute. (Ex. A, at § 1. F.) Finally, any unfair, ambiguous, or illegal term is severable per the terms of the Agreement. (Ex. A, at § 3.) Accordingly, the Agreement is substantively valid, fair and conscionable.

### E. GTZ Timely Asserted Plaintiffs' Agreement to Arbitrate and Timely Moves the Court to Arbitrate

Although there is no bright-line test to determine the deadline whereby a party must move to compel arbitration, GTZ's motion to compel is timely. See *Nasca v. Unknown Party, No*. CV-17-02861-PHX-DLR, 2018 U.S. Dist. LEXIS 38168, at *4 (D. Ariz. Mar. 8, 2018).

GTZ amended its Answer on April 27, 2021 (Doc 21-1.) Therein, GTZ asserted arbitration as an affirmative defense. *Id*. GTZ also asserted, in multiple places in the Joint Case Management Plan, that arbitration was the proper venue for this case, and that it objected to the Court's jurisdiction. (See Doc 23.) Initial Disclosures have not been

4845-8081-4055.1

exchanged and the scheduling conference has not been held. Moreover, there exists ample support, even from this Court, that moving to compel after filing an answer is consistent with asserting a right to arbitration. See *Nasca v. Unknown Party, No*. CV-17-02861-PHX-DLR, 2018 U.S. Dist. LEXIS 38168, at *5 (D. Ariz. Mar. 8, 2018) (Verizon moved to compel binding arbitration after asserting it as a defense in its answer); see also *On v. Stephen Vannucci, M.D., Inc*., No. 2:14-cv-02714-TLN-CMK, 2018 U.S. Dist. LEXIS 9072, 2018 WL 489157, at *4 (E.D. Cal. Jan. 19, 2018) (asserting binding arbitration as an affirmative defense in the answer and subsequently filing a motion to compel within four months is consistent with right to arbitrate); *Pinto v. USAA Ins. Agency Inc. of Texas*, 275 F. Supp. 3d 1165, 2017 WL 3172871, at *5 (D. Ariz. 2017) (moving to compel arbitration one month after removal to federal court did not constitute an unreasonable delay). For the forgoing reasons, the Court should grant GTZ's Motion.

Separately, Plaintiffs will have suffered no prejudice if this case is compelled to arbitration. Plaintiffs merely propounded boiler-plate written discovery—before initial disclosures have been exchanged. But because Plaintiffs' discovery is focused on ascertaining the putative class and because the Arbitration Agreement expressly waives collective and class actions, Plaintiffs premature discovery supports enforcement of the Arbitration Agreement.

### III. THE CASE SHOULD BE STAYED

Because this Court has no subject matter jurisdiction over the case, dismissal is proper. However, if the Court is not inclined to dismiss the case, it should be stayed until arbitration of all claims made by Plaintiffs have been arbitrated or otherwise resolved.

Under § 3 of the FAA, "the Court is required to stay proceedings pending arbitration if the Court determines that the issues involved are referable to arbitration under a written arbitration agreement." *Meritage Homes Corp. v. Hancock,* 522 F. Supp. 2d 1203, 1211 (D. Ariz. 2007); see also *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (stating the FAA requires courts to stay litigation of claims subject to arbitration pending the outcome of the arbitration of those claims under the terms

of the arbitration agreement).

GTZ, therefore, requests that this case be stayed until all disputes with Plaintiffs are resolved through arbitration.

## IV. CONCLUSION

For the foregoing reasons, GTZ requests that he Court compel Plaintiffs to arbitrate their FLSA claims against and stay the case pending completion of the arbitration proceedings.

DATED this 5th day of May, 2021

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:     *s/ Julie E. Maurer*
        Julie E. Maurer
        Jack E. Jimenez
        Andrew B. Kleiner
        Attorneys for Defendant
        GLOBALTRANZ ENTERPRISES, LLC

4845-8081-4055.1

# CERTIFICATE OF SERVICE

I hereby certify that on May 5th, 2021 I electronically transmitted the foregoing to the Clerk's office using the Court's CM/ECF system, to the following CM/ECF registrants and thereby served all counsel of record in this matter.

| | |
|---|---|
| David E. Schlesinger, Esq.<br>Rachhana T. Srey, Esq.<br>Kayla Kienzle<br>NICHOLS KASTER, PLLP<br>4700 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Attorneys for Plaintiffs<br>*JULIANA DAKLIN and*<br>*SAMANTHA THALER*<br>Schlesinger@nka.com<br>srey@nka.com<br>kkienzle@nka.com | Benjamin L. Davis, III<br>The Law Offices of Peter T. Nicholl<br>36 South Charles Street, Suite 1700<br>Baltimore, MD 21201<br>Attorneys for Plaintiffs<br>*JULIANA DAKLIN and*<br>*SAMANTHA THALER*<br>bdavis@nka.com |

By:  s/ Marcia McAlister



4845-8081-4055.1