**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JULIE E. MAURER, AZ Bar No. 023347
Julie.Maurer@lewisbrisbois.com
ANDREW B. KLEINER, AZ Bar No. 034479
Andrew.Kleiner@lewisbrisbois.com
2929 N. Central Avenue, Suite 1700
Phoenix, Arizona 85012
Telephone: (602) 385-1040
Facsimile: (602) 385-1051

JACK E. JIMENEZ, CA Bar No. 251648
Jack.Jimenez@lewisbrisbois.com
(Admitted Pro Hac Vice)
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant
GLOBALTRANZ ENTERPRISES, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA, PHOENIX

| | |
|---|---|
| Juliana Daklin and Samantha Thaler, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GlobalTranz Enterprises, LLC,<br><br>Defendant. | Case No. 2:21-cv-00204-JJT<br><br>**DEFENDANT GLOBALTRANZ ENTERPRISES, INC.'S MOTION FOR INJUCTIVE RELIEF PROHIBITING PLAINTIFFS' COUNSEL FROM CONTINUED ILLEGAL SOLICITATIONS AND SANCTIONS RE SAME**<br><br>(The Honorable John J. Tuchi) |

Pursuant to the Court's September 27, 2021 Order (Doc. 35) and the authorities set forth below, Defendant GlobalTranz Enterprises, LLC ("GTZ") moves the Court for injunctive relief and sanctions against Plaintiffs' Counsel ("PC"), and each of them, for continued improper and unethical conduct despite repeated demands from GTZ to cease the same. Specifically, GTZ seeks injunctive relief prohibiting PC from further soliciting current and former GTZ personnel to join a non-existent FLSA collective action. Further, GTZ seeks sanctions against PC for its improper and unethical solicitations in violation of the Arizona Rules of Professional Conduct. Specifically, GTZ requests the following:

1.  That PC be barred from representing any "opt-in" who did not work directly with named Plaintiffs Thaler and Daklin in Minneapolis;

2.  That PC be barred from recovering any fees for any work for any "opt-in" who did not work directly with named Plaintiffs Thaler and Daklin in Minneapolis;

3.  That PC be required to draft and implement a written program about solicitation and to train all attorney and non-attorney staff about prohibited solicitation;

4.  That a copy of any order from this Court, if it finds that PC engaged in prohibited solicitation, be forwarded to the State Bar of Arizona for further action; and

5.  That PC reimburse GTZ for all fees related to resolving this issue, including this motion for injunctive relief and previous correspondence regarding same.

Further, because GTZ suspects that PC improperly obtained a list of GTZ employees as well as their personal information—including home addresses—to directly solicit consent to join this action, GTZ requests disclosure of this information, the manner by which PC obtained it as well as how PC used it to solicit "opt-ins."

Finally, as set forth in detail below and in response to the Court's September 27, 2021 Order, GTZ respectfully requests a finding that:

1.  PC's continued conduct violates well established law governing and interpreting collective actions—including holdings by this Court that pre-certification solicitation of opt-ins is only permitted after court order;

2.  PC's continued conduct violates the Rules of Professional Conduct of the Supreme Court of Arizona, specifically Rules 7.1 and 7.3; and

3.  PC's continued conduct violates the rules of professional responsibility of the other jurisdictions to which PC is admitted (or at least merits notification of this Court's concern), which includes at the very least Minnesota and Maryland.

This Motion is supported by the following memorandum of points and authorities, the attached exhibits, and any other documents or pleadings presently on file before the Court.

. . .



# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

Plaintiff Juliana Daklin was hired by GTZ in September 2018 and Plaintiff Samantha Thaler was hired in January 2019; both were employed as Logistics Representatives in Minneapolis, Minnesota. (Doc. 1.) In January 2019 and again in January 2020, Daklin and Thaler signed binding arbitration agreements that contained collective action waivers.

On February 8, 2021, Plaintiffs filed their Complaint in this Court in breach of their binding agreements to arbitrate FLSA claims. Plaintiffs breached the agreements by attempting to bring a collective action. In response to the Complaint, GTZ moved to compel arbitration and stay all proceedings pending results of the arbitrations. (Doc. 24.) Plaintiffs did not oppose the motion, but rather agreed to arbitrate and stay the case. On May 19, 2021, the Parties filed a stipulation reflecting this agreement (Doc 29), and this Court entered an Order granting the stay and arbitration process on May 21, 2021. (Doc 31.)

Unbeknownst to GTZ at the time, as early as November 3, 2020—and likely earlier—PC directly mailed solicitation letters to current and former employees of GTZ at their home addresses for the sole purpose of soliciting potential plaintiffs and "opt-ins." (Exhibit A.) Then on or about June 9, 2021, PC continued targeting GTZ personnel by sending additional solicitations to them (again, at their home addresses) to join the lawsuit—the same lawsuit that this Court stayed weeks before. (Exhibit B.) It is unclear exactly how PC obtained the names and addresses of GTZ's personnel, but GTZ believes that PC wrongfully obtained confidential and proprietary information, then used this information to directly solicit GTZ personnel to join a collective action that does not exist.

On July 7, 2021 (upon learning of PC's direct home solicitation of GTZ employees), GTZ contacted PC demanding that they cease and desist from soliciting "opt-ins." (Exhibit C.) PC ignored this request. On September 7, 2021, GTZ again contacted PC requesting they cease and desist their improper solicitation efforts. (Exhibit D.) PC again dismissed GTZ's request without citing any controlling authority or legal basis, but instead threatening that PC would seek fees and costs "if GTZ filed such a frivolous motion". (*Id*.)

To date, PC has signed 22 plaintiffs and "opt-ins": nine in Arizona, eight in Minnesota, three in Utah, and one each in West Virginia and Illinois.

## II. THIS COURT HAS JURISDICTION TO ADJUDICATE THIS LIMITED ISSUE

This case is not dismissed, it is stayed. The Court retains jurisdiction over this case even though it stayed the case to allow arbitration to proceed. In *PMS Distrib. Co. v. Huber & Suhner, A.G.,* 863 F.2d 639 (9th Cir. 1988), the Ninth Circuit addressed a different but similar issue that is instructive here. In *PMS*, the Ninth Circuit reviewed whether a district court could grant a writ of possession **after** it had previously ordered the parties to arbitration under the Federal Arbitration Act. The Ninth Circuit concluded "that an order to compel arbitration **does not** strip the district court of authority to grant a subsequent writ of possession." *Id*. at 641 (emphasis added). The Court also stated, "[a] district court's order to arbitrate, with or without a retention of jurisdiction, has an 'ongoing effect,' and the parties may return to the district court for interpretation or modification of the order." *Id*. at 642.

Twenty-two years after *PMS* was decided, the Ninth Circuit took up an even more analogous issue in *Toy Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975 (9th Cir. 2010). There, the Ninth Circuit held that the district court erred when it determined that it lacked authority to grant injunctive relief. *Id*. at 978. In support of its conclusion, the Ninth Circuit reasoned,

> The importance of the courts' ability to issue interim injunctive relief is even more apparent now than when we decided *PMS* twenty-two years ago. We assume that parties ordinarily choose to arbitrate . . . to lower costs and increase efficiency and speed. However, arbitration's promised speed and efficiency frequently do not materialize in practice. Moreover, one party to the arbitration often has an incentive to delay arbitration proceedings to its own advantage. . . . Even without bad faith by either party, the selection of arbitrators and the constitution of the arbitral panel necessarily takes time. . . . If Toyo loses its customers before interim relief is possible, any subsequent relief could be useless. As recognized in *PMS*, the unavailability of interim conservatory measures can frustrate the arbitration process.

*Id*. at 980-81.

Like in *Toy Tire Holdings*, GTZ seeks immediate injunctive relief to stop PC's continued solicitation of "opt-ins" to join a non-existent collective action. Plaintiff has not

filed a demand for arbitration, and no arbitrators have been selected. The delay in waiting for PC to act would only result in further misconduct by PC and further prejudice to GTZ. Because the Court is empowered to issue interim injunctive relief and still has jurisdiction over this case, this Motion is properly before the Court.

### III. PRE-CERTIFICATION CONTACT OF POTENTIAL FLSA "OPT-INS" IS ONLY PERMITTED BY COURT ORDER

The FLSA provides no guidance to the courts in dealing with pre-certification contact of opt-ins. Consequently, the district courts have relied on cases like *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989) and others for guidance. In *Sperling*, the Supreme Court held that in an ADEA action (and thus an FLSA action)[1] a district court has discretion to implement notice procedures. *Id.* at 169-70.

Adhering to *Sperling*, the District of Arizona adopted the "two-tiered approach." *See Barrera v. US Airways Grp., Inc.*, No. CV-2012-02278-PHX-BSB, 2013 U.S. Dist. LEXIS 124624, at 5 (D. Ariz. Aug. 30, 2013), *Stickle v. SCI Western Mkt. Support Ctr.*, 2009 U.S. Dist. LEXIS 97735, 8-9 (D. Ariz. Sept. 30, 2009); *Hutton v. Bank of Am.*, 2007 U.S. Dist. LEXIS 97516, at 2 (D. Ariz. Mar. 31, 2007).

Under the "two-tiered approach", the District Court of Arizona begins with the "Notice" stage, which, "[is where] the court determines whether the proposed class members are similarly situated employees and therefore should be notified about the pending action." *Barrera,* 2013 U.S. Dist. LEXIS 124624, at 5-7.

During the "Notice" stage, if the plaintiff demonstrates that the proposed class members are similarly situated, then the court may conditionally certify the class. *Id.* at 7-8. If the court conditionally certifies the class, the court—not plaintiffs' counsel unilaterally—will direct notice to the potential class members to inform them of their right to join an FLSA collective action. *Id.* Court-facilitated notice is intended to ensure that the

---

[1] "Section 7(b) of the ADEA incorporates enforcement provisions of the FLSA under 29 U.S.C. § 201 *et seq.*" *Sperling*, 493 U.S. at 167; 29 U.S.C. § 626(b) (incorporating §216).

**form, content, and methods of distribution are timely, accurate, neutral, and informative**. *Sperling.*, 493 U.S. at 171-72 (emphasis added); *Arceo v. Orta*, 296 F. Supp. 3d 818, 822-23 (N.D. Tex. 2017); *Williams v. Omainsky*, No. 15-0123-WS-N, 2016 U.S. Dist. LEXIS 7419, at 40 (S.D. Ala. Jan. 21, 2016); *Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85, 89 (E.D. Pa. 2015). Indeed, the *Sperling* Court reasoned, "[a]lthough the collective form of action is designed to serve the important function of preventing [FLSA violations], the potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice." *Sperling*, 493 U.S. at 171.

Likewise, in *Bouder v. Prudential Fin., Inc.*, Civil Action No. 06-CV-4359 (DMC), 2007 U.S. Dist. LEXIS 83338, (D.N.J. Nov. 8, 2007), the district court dealt with this exact issue. In *Bouder*, plaintiffs' counsel filed an FLSA collective action and before it filed a motion for conditional certification, plaintiffs' counsel sought permission to send direct mail letters to the opt-ins. After full briefing by both sides, the *Bouder* court prohibited plaintiff's counsel from contacting the opt-ins in this manner, finding that counsel (like PC in this action) neither sought nor received permission to proceed as a collective action or to begin notice. *Id*. at 6. The district court also found that the solicitation letters were improper because they were "deceptive, misleading, and contain[ed] numerous false statements." *Id*. Relying on several holdings from across the country, the *Bouder* court held that courts are empowered to preclude counsel from making pre-certification statements to potential opt-ins because they are inaccurate, misleading, or present biased assertions as undisputed or true. The *Bouder* court granted the defendant's motion, ordering plaintiffs counsel to cease and desist. *Id*. at 6-8.

Unlike PC here, in *Bouder*, plaintiffs' counsel had the presence of mind to inform defendant's counsel of its intent and to provide a sample of the notices before such notices were sent. Here, PC started covertly soliciting potential "opt-ins" unilaterally: unchecked and unauthorized. At no time between filing the Complaint and this Court staying the present action did PC engage in the "two-tiered approach." PC never moved to conditionally certify a collective action, and PC never obtained permission to contact "opt-ins." Nevertheless,

PC has and continues to directly contact GTZ personnel informing them that a collective action has been filed against GTZ, soliciting them to join. Furthermore, PC has and continues to advertise this action on their firm websites, as well as through ads on LinkedIn.com and additional social media outlets (the complete extent of which is currently unknown).

Because no collective action exists and because this Court has not permitted PC to issue court-approved notices of the same, PC must be permanently enjoined from contacting current or former GTZ personnel about this case directly, via websites or via social media.

### A. Plaintiffs' Arbitration Agreements Preclude PC from Providing Notice of an FLSA Action.

Plaintiffs' Arbitration Agreements waived collective action. Further, Plaintiffs stipulated to arbitrate all claims. Moreover, Plaintiffs did not seek conditional certification of a collective action. As such, PC was and is prevented from soliciting "opt-ins."

Specifically, in *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019), the Circuit Court held that plaintiffs **could not** send notice to employees with a valid arbitration agreement unless the record showed that nothing in the agreement prohibited the employee from participating in the collective action. The Fifth Circuit found that the lower court erred in ordering notice to employees with valid arbitration agreements. Further, the Circuit Court stated that the legal issue was "squarely" before the Court and doing so was part of the Court's authority to correct "errant caselaw" from district courts in the Circuit. *Id*. at 504. In addressing the issue of notice, the Circuit Court held that if there is no dispute as to the existence or validity of an arbitration agreement, "it is error for a district court to order notice to be sent to that employee." *Id*. at 502-3.

Here, *JP Morgan* is instructive. There has been no request for conditional certification by Plaintiffs. There is no dispute over the existence or validity of the arbitration agreements. Plaintiffs agreed to arbitrate, Plaintiffs also agreed to waive the collective action, and Plaintiffs agreed to stay the case pending resolution of the arbitrations. (Doc. 29.) On these bases, notice never should have been published or mailed to any potential

4813-7944-6781.1                                7

"opt-ins," thereby making PC's solicitations improper *ab initio.*

Similarly, in *Bigger v. Facebook, Inc.,* 947 F.3d 1043, 1050 (7th Cir. 2020)[2] the Seventh Circuit determined that a court may not authorize notice to individuals with valid mutual arbitration agreements waiving their right to join the action.  The *Bigger* Court further explained that "notice" presents an opportunity for abuse of the collective action process because plaintiffs may improperly expand the litigation to gain settlement leverage where a valid arbitration agreement exists, and because allowing notice to those individuals has the potential to make notice more about increasing settlement pressure than informing potential "opt-ins" about the litigation. *Id*. at 1049.

Here, Plaintiffs stipulated to arbitrate all claims and waived collective action. Moreover, conditional certification was neither requested nor granted to Plaintiffs.  Thus, under the law of *JP Morgan* and *Bigger,* PC had no right to contact—let alone solicit—any of the "opt-ins."  Enjoining PC from any further solicitations and imposing sanctions (addressed below) is the only way for this Court to attempt to cure the severe prejudice to GTZ caused by PC's unethical conduct.  Therefore, GTZ requests an order enjoining PC from contacting any potential "opt-ins," including current and former employees of GTZ, and any advertising of the same on its websites or any other online or social media platforms.

**B.     Fed. R. Civ. P. 83 Further Empowers the Court to Regulate and Restrict PC's Improper Solicitation.**

Rule 83 of the Fed. R. Civ. P empowers the Court "in any case, 'not provided by rule,' to 'regulate their practice in any manner not inconsistent with 'federal or local rules.'" *Sperling*, 493 U.S. at 172.  Indeed, the U.S. Supreme Court stated that "Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit. This authority is well settled, as courts traditionally have exercised considerable authority "to manage their own

---

[2] Although the Ninth Circuit has not yet considered whether FLSA opt-in notice should be sent to employees who have signed arbitration agreements, a district court in this Circuit has followed *JP Morgan* and *Bigger*. *See Droesch v. Wells Fargo Bank, N.A*., No. 20-cv-06751-JSC, 2021 U.S. Dist. LEXIS 125410, at 5-7 (N.D. Cal. July 6, 2021).



affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 172-73. Moreover, like here, courts have a strong interest "in managing collective actions in an orderly fashion" and the Federal Rules of Civil Procedure provide that authority. *Id.*

This Court has broad powers to enjoin PC's continued improper solicitation of "opt-ins." GTZ has been severely prejudiced because Plaintiffs have benefitted from the notice procedures of a conditionally certified collective action, when no such action has or will take place given the binding arbitration agreements. Indeed, PC **would not** have signed up twenty additional current or former GTZ employees, **but for** PC's continued illegal and unethical conduct.

### IV. PC'S DIRECT SOLICITATION LETTERS ARE MISLEADING AND IMPROPER

GTZ is aware of at least two versions of PC's solicitations letters (although more may exist). (Exhibits A and B.) When GTZ received a copy of the June 9, 2021 solicitation letter (Exhibit B) from one of its current employees, GTZ immediately demanded that PC cease and desist. (Exhibit C.) Despite GTZ's repeated requests, PC continues its improper conduct.

Specifically, as GTZ expressly set forth in its correspondence to PC dated July 7, 2021 and again on September 7, 2021 (Exhibits C and D), PC's solicitations remain improper for the following reasons:

1. GTZ denies all liability and no such statement appears in Exhibits A or B.

2. The second paragraph of Exhibit B states: "We understand that GlobalTranz assigned logistics representatives a heavy workload that required them to work overtime hours and paid them a salary with no extra pay for their overtime hours." GTZ denies this allegation. Inclusion of this statement without a denial by GTZ infers this statement is true.

3. In paragraph three, Exhibit B states, "We reached an agreement with GlobalTranz…" This statement infers that GTZ has in some way approved this notice or accepts liability. Neither GTZ nor its counsel approved this letter or the representations made therein. Indeed, PC sought no Court approval before sending these letters.

4. Paragraph three, Exhibit B also states: "representatives who make a claim for overtime pay will not be required to go to court, but rather, can go through a less formal process called arbitration." Arbitration is a formal process and all current employees have agreed to binding arbitration for FLSA actions. Any "opt-ins" will be deposed, have to respond to discovery, and appear for and attend the arbitration hearing until its conclusion. The court in *Zhongle Chen v. Kicho Corp.*, No. 18 CV 7413 (PMH) (LMS), 2020 U.S. Dist. LEXIS 67935, at *1 (S.D.N.Y. Apr. 17, 2020) required a statement that the plaintiffs may be required to appear for deposition or testify at trial. *Id.* at 39. No such statement exists here.

5. Exhibit B states: "We are currently working with GlobalTranz to get data to calculate the amount of overtime pay potentially owed…" The word "potentially" does not change the tone of the letter. It implies GTZ is liable for overtime pay, which it denies. It also fails to identify GTZ's counsel or provide their contact information as was required in *Chen*. *Id* at 27.

6. Exhibit B is overbroad and should be limited by geographic region and time. Contacting potential "opt-ins" in states in which no attorneys in which PC's firm are licensed is tantamount to practicing law without a license, especially since there is no collective action. PC assumes that if two plaintiffs from Minnesota signed up it can advertise that a nationwide collective action has been filed and that anyone ever employed by GTZ should join. Unless a court determines that there is a nationwide collective action—which there never will be considering the collective action waiver—Plaintiffs claims should be limited to Minneapolis, Minnesota. *See Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013). Therefore, by claiming this is a nationwide collective action, it is misleading and has prejudiced GTZ. (Exhibit C.)

Like PC's improper solicitations, courts throughout the country provide instruction as to the parameters of what constitutes misleading communications. Specifically, in *Chen,* 2020 U.S. Dist. LEXIS 67935, plaintiffs moved for conditional certification of an FLSA collective action and to obtain permission to issue notice of the action to potential opt-ins.

Conditional certification was granted, and the right to issue FLSA notices to current and former employees. However, the Court significantly limited the notice process. Specifically, plaintiffs' counsel was directed to include defendant's counsel contact information, which was missing from the draft notice. *Id*. at 27. The court also forbade plaintiff's counsel from publishing the opt-in notice on its firm website. *Id*. at 28. Indeed, the court held there was "no reason to believe that posting the opt-in notice on Plaintiff's counsel's website would reach potential plaintiffs in a way that mail, text, email, and social media messages would not." *Id*. The court also denied plaintiffs the right to publish the notices on social media pages. *Id*. at 35-36. Lastly, the court set a 60-day opt-in deadline, whereby an opt-in had to choose to join the collective action or be excluded. *Id*. at 30.

Similarly, in *Hamadou,* 915 F. Supp. 2d at 668, the defendants owned and operated 243 retail gas stations in New York state, including the Queens and Bronx stations where named plaintiffs worked. *Id*. at 654. The court denied conditional certification for a statewide collective because plaintiffs failed to establish a statewide policy or practice at issue. *Id*. at 662-64. Additionally, the court found plaintiffs' FLSA notice was overbroad because the notice used the words "and all their gas station locations in New York State." *Id*. at 668. The court also set a 60-day opt-in period from the date of the notice. *Id*. at 668-69. Finally, the court required the notice to include language informing potential opt-ins that their "right to participate in this suit" could be narrowed if the court finds they and the plaintiffs are not similarly situated. *Id*. at 669. *See also Reyes v. Quality Logging, Inc*., 52 F. Supp. 3d 849, 849, 52-54 (S.D. Tex. Oct. 10, 2014) (sustaining defendant's objections that the notice failed to inform opt-ins that they did not have to participate, or retain plaintiffs' counsel, but they could contact their own attorney to discuss the case; the court ordered plaintiffs' proposed notice be submitted to the court for in camera review after approved edits were made).

Here, while PC believes that it can indefinitely solicit "opt-ins" with no expiration date in sight, PC should not be allowed to solicit anyone, much less *ad infinitum*. PC had no permission from the Court and they followed no court approved procedures. Indeed,

even in *Chen,* 2020 U.S. Dist. LEXIS 67935 at *30* and *Hamadou*, 915 F. Supp. 2d at 668-69, both courts set 60-day opt-in periods from the date of the notice. As such, even in the unlikely event that this Court may be inclined to set a notice period in this case (which it should not), such period already expired. Any notification period began (at the latest) on PC's first known solicitation dated November 3, 2020 and expired 60-days thereafter. PC's conduct is improper and they must be enjoined from contacting any potential "opt-ins."

## V. PC'S WEBSITES AND OTHER SOCIAL MEDIA ADVERTISING ARE MISLEADING AND IMPROPER

Like Exhibits A and B, PC's websites advertise the same misleading "opt-in" notice. (Exhibit E.1.) *See also* https://www.nka.com/cases/employment-cases/globaltranz-enterprises.html and https://www.nicholllaw.com/blog/globaltranz-overtime-lawsuit/. Specifically, on www.nka.com, there are multiple links that allow potential "opt-ins" to join this case. It also provides legal advice about topics ranging from statutes of limitations to how to prove their claims. Most concerning is PC's misrepresentation that "Logistics Representatives" are a position that GTZ employs all over the country. (*Id*.) Further, the nka.com website misleadingly states "we have since reached an agreement with GTZ that Logistics Representatives who make a claim for overtime pay will not be required to go to court, but rather, can go through a less formal process called arbitration." (*Id*.) There is no "agreement" as PC suggest, but rather GTZ is enforcing its binding arbitration agreements.

Further, under the tab "Additional Information" on the bottom of the main page, PC incorrectly informs potential "opt-ins" that anyone who worked for GTZ in any state across the country within the past three years can make a claim for unpaid overtime." (Exhibit E.2) This is grossly misleading. As stated herein, only the Court may determine if a nationwide collective action will proceed. Further, Plaintiffs waived that right by agreeing to arbitrate their claims. Additionally, PC is soliciting "opt-ins" in states where they are not admitted to practice law and where no active case is pending, for example in North Carolina and West Virginia where PC mailed solicitation letters. (Exhibits A and B.) While it remains unclear when PC published this information on its website, there exists no dispute that they never

sought the Court's approval to publish it, let alone review the content. *See Chen*, 2020 U.S. Dist. LEXIS 67935, at 28.

Likewise, since at least February 16, 2021, www.nicholllaw.com also advertised its FLSA suit against GTZ. (Exhibit F.1.) *See* https://www.nicholllaw.com/blog/globaltranz-overtime-lawsuit/). Like www.nka.com, this site contains misleading information because it states that counsel is looking for employees who worked for GTZ at any point in the last three years. *Id*. An FLSA claim has a two-year statutory period, not three. *See* 29 U.S.C. § 255; *Wertheim v. Arizona*, No. CIV 92-453 PHX RCB, 1993 U.S. Dist. LEXIS 21292, at 12 (D. Ariz. Sep. 28, 1993). Accordingly, this statement is misleading.

Clicking the link "Industries That Often Violate Laws on Overtime Pay for Workers" takes you to a page that misleadingly informs potential "opt-ins" that various industries or positions are "often" liable for denying overtime. (Exhibit F.2.) This is not just puffery or opinion, but rather PC's website is offered as legal advice or, at a minimum, as undisputed fact, which it is not. Further, clicking the blue hyperlinked words "click here," at the bottom of the main page takes an "opt-in" to a DocuSign page where the individual signs up to become a firm client, without informing potential "opt-ins" that they do not have to retain these attorneys. (Exhibits F.1 and F.3.)

Lastly, on September 3, 2021, counsel for GTZ discovered a Nichols Kaster advertisement on LinkedIn.com wherein PC was soliciting "opt-ins" to join this case. (Exhibit G is a screen shot taken by Andrew Kleiner, counsel of record for GTZ, showing this advertisement.) Exhibit G establishes yet another example of PC's continued improper and misleading solicitations on websites and social media. These advertisements and solicitations are improper and must be enjoined.

## VI. PC'S CONDUCT VIOLATES THE RULES OF PROFESSIONAL CONDUCT OF THE SUPREME COURT OF ARIZONA

As the Court noted in its Order permitting this Motion (Doc. 35), any attorney appearing in this action—whether licensed or via *pro hac vice*—is bound and governed by the Rules of Professional Conduct of the Supreme Court of Arizona. Based on information

and belief, each of the following are counsel of record for Plaintiffs and are admitted to practice law in the following jurisdictions:

<u>NICHOLS KASTER, PLLP</u>
David E. Schlesinger, AZ Bar No. 025224, MN Bar No. 0387009
Rachhana T. Srey, MN Bar NO. 340133 (AZ admitted *pro hac vice*)
Michell Fisher, MN Bar No. 303069, (AZ admitted *pro hac vice*)
Kayla Kienzle, MN Bar No. 0399975 (AZ admitted *pro hac vice*)

<u>THE LAW OFFICES OF PETER T NICHOLL</u>
Benjamin L. Davis, MD Bar No. 29774 (AZ admitted *pro hac vice*)

**A.     PC Solicited "Opt-Ins" in Violation of Rule 7.3.**

PC's communications with potential "opt-ins" constitute solicitations and violate ER 7.3.  Under ER 7.3(a), solicitation occurs when:

> A communication initiated by or on behalf of a lawyer or firm that is directed to a specific person the lawyer knows or reasonably should know needs legal services in a particular matter and that offers to provide, or reasonably can be understood as offering to provide, legal services for that matter.

Here, Exhibits A and B alone (in addition to PC's websites and social media solicitations) were directed to specific current or former employees of GTZ.  PC knew or believed these persons needed legal counsel because the letter states "we understand that you are or were employed by GlobalTranz . . . and we believe that GTZ may have violated the [FLSA] by not paying . . . overtime. . . ." (Exhibit B.)  PC's purpose in sending Exhibits A and B was to solicit legal representation and to invite the "opt-ins" to make a claim by simply going to a website or scanning a QR code with their phone.  *Id*.  Accordingly, the solicitation letters (as well as websites and social media posts) offer legal services to the prospective "opt-ins."

Because PC so blatantly and repeatedly violated ER 7.3, the only appropriate consequence is severe sanctions, like those handed down by the courts in *Hamm v. TBC Corp.,* 597 F. Supp. 2d 1338, 1352-53 (S.D. Fla. 2008), affirmed 345 Fed. Appx. 406 (11th Cir. 2009).  In *Hamm v. TBC Corp.,* 345 Fed. Appx. 406 (11th Cir. 2009), the Eleventh Circuit reviewed a Magistrate and District Court's imposition of sanctions against PC for improperly soliciting potential opt-ins in an FLSA case.  Each of the five sanctions handed down by the Magistrate/District Court were upheld on appeal.  The approved sanctions were:

(1) barring plaintiff's counsel from representing any current opt-in, who did not work with any of the named Plaintiffs in the action; (2) barring plaintiff's counsel from recovering any fees or costs for work performed in representing any individual who did not work with the named plaintiffs; (3) ordering plaintiff's counsel to formulate and implement a written policy on solicitation and train all attorney and non-attorney staff at the firm; (4) providing a copy of the Report and Recommendation and any Order adopting it be forwarded to the Florida Bar for possible future action; and (5) ordering plaintiff's counsel to reimburse defendants for all reasonable fees and costs incurred in bringing and prosecuting defendant's motion for sanctions. *Id*. at 409.

Here, as evidenced by verbiage soliciting potential plaintiffs "across the country" on PCs' websites as well as the letters sent by PC to West Virginia and North Carolina, PC likely sent hundreds of letters to GTZ employees across the country (the extent of which cannot be uncovered fully without this Court's intervention) in hopes of signing them up to a lawsuit that was stayed by this Court. (Exhibits A and B.) Specifically, while Plaintiffs Daklin and Thaler were employed by GTZ in Minneapolis, Minnesota (Doc 1), PC signed up 20 additional "opt-ins" from locations across the country including Arizona (9), West Virginia (1), Utah (3), Minnesota (6), and Illinois (1). Despite this, Nichols Kaster only has offices in Minneapolis and San Francisco, and the Law Offices of Peter T. Nicholl are only located in Maryland and Virginia.

This unethical behavior cannot be condoned and sanctions—exactly like those handed down in *Hamm*—are the only appropriate response. Accordingly, GTZ requests the following sanctions against PC, and each of them:

1. That PC be barred from representing any "opt-in" who did not work directly with named Plaintiffs Thaler and Daklin in Minneapolis;

2. That PC be barred from recovering any fees for any work for any "opt-in" who did not work directly with named Plaintiffs Thaler and Daklin in Minneapolis;

3. That PC be required to draft a written policy about solicitation and implement and train all attorney and non-attorney staff about prohibited solicitation;

    4.     That a copy of any order from this Court, if it finds that PC engaged in prohibited solicitation, be forwarded to the State Bar of Arizona for further action;

    5.     That PC reimburse GTZ for all fees related to resolving this issue with Plaintiffs, including this Motion as well as previous cease-and-desist correspondence; and

    6.     That PC disclose the source and content of the names and addresses of current and former employees of GTZ that it solicited.

**B.  PC's Solicitations Are Misleading in Violation of ER 7.1.**

ER 7.1 states: "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. (a) A communication is false or misleading if it contains material misrepresentations of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." While there appears to be no Arizona caselaw specifically addressing ER 7.1 in this context, there are numerous cases across the country finding that solicitations, such as those used by PC here, constitute improper, false and misleading communications. *See Hamm,* 597 F. Supp. 2d at 1352 (finding that a law firm who engaged in pre-certification telephone contacts with potential class members to solicit them to join in an FLSA case violated the applicable solicitation rule), affirmed 345 Fed. Appx. 406 (11th Cir. 2009); *Self v. TPUSA, Inc*., 2008 U.S. Dist. LEXIS 71341, at 7-15 (D. Utah Sept. 19, 2008) (requiring modification of certain misleading statements made on a website to attract potential class members in an FLSA action); *Alaniz v. Sam Kane Beef Processors*, 2007 U.S. Dist. LEXIS 89161, at 3-4 (S.D. Tex. Dec. 4, 2007) (issuing a temporary restraining order against plaintiffs for overbroad and misleading flyers, radio announcements, and billboards in a FLSA case); *Bouder,* 2007 U.S. Dist. LEXIS 83338, at 6-7 (holding that a letter sent to potential opt-ins was improper solicitation as it was deceptive, misleading, and contained numerous false statements).

Like the foregoing authorities, PC continues to engage in misleading and unethical solicitation in violation of the Arizona Rules of Professional Conduct. Accordingly, GTZ requests that PC, and each of them, be enjoined from any further solicitation actions in this case and that their conduct be reported to the State Bar of Arizona for further action.



### C. Minnesota and Marylands' Rules of Professional Conduct Generally Mirror Arizona's Rules of Professional Conduct.

The Minnesota and Maryland Rules of Professional Conduct are similar to those in Arizona. Specifically, Minn. R. Prof. Conduct 7.1 states, "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." Maryland's Rules of Professional Conduct are no different. *See* Md. Rule 19-307.1

In both Minnesota and Maryland, although attorneys may advertise to the general public, there are limits on solicitation. *See* Minn. R. Prof. Conduct 7.3 (generally permitting, but prohibiting false or misleading communications); Md. Rule 19-307.3 (generally restricting in-person or live solicitation). Even though Ariz. Rules of Prof'l Conduct R. 7.3 applies to all communications, and Minnesota and Maryland rules do not, Minnesota and Maryland attorneys "have a responsibility to avoid 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.*, 1991 U.S. Dist. LEXIS 10561, at 8 (D. Minn. 1991); *see also D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 891 (D. Md. 1995) (citing to and following *Severtson v. Phillips Beverage Co.*).

The Minnesota and Maryland Rules of Professional Conduct generally mirror the Professional Rules of Arizona. Furthermore, PC's filed their action in Arizona and sought pro hac vice admission in Arizona. They are bound by all such Rules, dictating that PCs' conduct was improper and unethical.

## VII. CONCLUSION

For the foregoing reasons, GTZ respectfully requests that the Court grant its Motion for Injunctive Relief and Sanctions against PC for their improper, unethical and continued solicitations of "opt-ins."

. . .

. . .

. . .



4813-7944-6781.1

17

DATED this 1st day of October, 2021.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: *s/ Julie E. Maurer*
Julie E. Maurer
Andrew B. Kleiner
Jack E. Jimenez
Attorneys for Defendant
GLOBALTRANZ ENTERPRISES, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2021 I electronically transmitted the foregoing to the Clerk's office using the Court's CM/ECF system, to the following CM/ECF registrants and thereby served all counsel of record in this matter.

| | |
|---|---|
| David E. Schlesinger, Esq.<br>Rachhana T. Srey, Esq.<br>Kayla Kienzle<br>NICHOLS KASTER, PLLP<br>4700 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Attorneys for Plaintiffs<br>*JULIANA DAKLIN and*<br>*SAMANTHA THALER*<br>Schlesinger@nka.com<br>srey@nka.com<br>kkienzle@nka.com | Benjamin L. Davis, III<br>The Law Offices of Peter T. Nicholl<br>36 South Charles Street, Suite 1700<br>Baltimore, MD 21201<br>Attorneys for Plaintiffs<br>*JULIANA DAKLIN and*<br>*SAMANTHA THALER*<br>bdavis@nka.com |

By: _s/ Marcia McAlister_